NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260153-U

NO. 4-26-0153

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 13, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| SHANE J. LOMELINO, | ) | No. 25CF1605 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court did not err in finding defendant posed a real and present threat to
a person that could not be mitigated by conditions and in ordering him detained.

¶ 2     Defendant, Shane J. Lomelino, appeals the circuit court's order denying his

pretrial release under section 110-6.1(a)(3) of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/110-6.1(a)(3) (West 2024)). Defendant contends the State failed to prove by clear

and convincing evidence he posed an unmitigable threat to the safety of a person. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     On November 21, 2025, a police officer filed a sworn complaint charging

defendant with, on September 23, 2025, violating a "stalking/no contact order" (740 ILCS

21/125 (West 2024)). According to the complaint, defendant violated the stalking/no contact

order issued in Sangamon County case No. 25-OP-1931 by contacting the protected party,

Amanda Kirkland, through electronic communication, and defendant had been earlier convicted of another violation of an order of protection in Sangamon County case No. 22-CF-64.

¶ 5        On December 1, 2025, at defendant's first appearance on the charge, the State filed a verified petition to deny defendant pretrial release under section 110-6.1(a)(3) of the Code (725 ILCS 5/110-6.1(a)(3) (West 2024)). The State asserted defendant's pretrial release poses a real and present threat to Kirkland. For the factual basis supporting its petition, the State provided the following, in part:

> "On 9-23-2025 at about 10:00 PM, Officers with the Chatham Police Department spoke with Amanda Kirkland who indicated she received a phone call from a blocked number earlier that morning. When she answered the call she heard [defendant] say 'who picked you up from work last night?' Officers verified Kirkland has an active and served Stalking/No Contact Order expiring in September of 2027. Officers also spoke to Kirkland's mother, Debra Young who indicated she was present and heard the phone call as well. She also identified [defendant] as the voice on the other end of the phone.

> Officers then notified [defendant's] Parole Agent who was able to apprehend [defendant]. Parol[e] agents were able to find [two] cell phones on his person that showed attempted calls to Kirkland. He additionally admitted to contacting Kirkland."

¶ 6        The State's petition provides defendant's criminal history. In 2024, defendant committed unlawful restraint (Macoupin County case No. 24-CF-71), for which he was on

mandatory supervised release at the time of the charged offense. In Macoupin County case No. 22-CF-64, defendant was convicted of violation of an order of protection. In Macoupin County case No. 21-CF-396, he was convicted of domestic battery, and he was on mandatory supervised release for that offense when he contacted Kirkland in September 2025. Defendant was also convicted of committing criminal damage to property and possession of methamphetamine in 2019. He had convictions for committing resisting a peace officer and criminal trespass to residence in 2015. The State asserted the victim in case No. 22-CF-64, violation of an order of protection, and case No. 21-CF-396, domestic battery, was Kirkland.

¶ 7        Attached to the State's petition was a police report. In the report, an officer stated he learned defendant's parole would be revoked as a result of the charged offense and defendant would have to serve the remainder of his sentence in the Illinois Department of Corrections (DOC) until approximately August 2028. Another officer reported seeing texts from defendant, which included texts asking, " 'Who was you with after work?' " and, " '[A]nd are you staying in your own place now?' " Another text states, " '[A]nd be apart and yet together. Never will work. Hope you find what [you're] looking for.' " In the longest text, defendant wrote the following:

> " 'Anyways congratulations on everything and completing drug
> court. I hope you stay sober and continue with your success. Just
> know I will always love you and miss you. This is just too hard
> and caused to[o] much for me knowing you want to talk to these
> guys and have them over to your new place. I mean having one
> pick you up from work. It's not my business but I can't handle and
> so I gotta walk away completely and not pay attention. *** Can't

have your place a.' "

¶ 8        At the hearing on the State's petition, the State repeated the allegations contained in the petition. The State clarified defendant was "picked up in September for this" and was held in the DOC to serve time due to his violation of the terms of his mandatory supervised release for either case No. 24-CF-71 (unlawful restraint) or case No. 21-CF-396 (domestic battery). The State was told "in the report" defendant would serve the remainder of his sentence until 2028. Once the State learned he would soon be released "because charges had not been filed" in either of those Macoupin County cases, the State filed the current charge. The DOC released defendant on November 24, 2025. He was then arrested and brought in on this charge.

¶ 9        Defense counsel countered defendant was not a danger to Kirkland. Counsel emphasized there were no allegations defendant made threats or was near the victim. Defendant had been staying at a halfway house, and "parole" approved his home address in Raymond, Illinois. Defendant was employed, installing floors for Abbott Flooring during the week. On the weekends, defendant worked on a farm owned by his brother. Defendant received Supplemental Nutrition Assistance Program benefits. He had a two-year degree. Defendant had family support and two teenage children who resided with their mother. Defendant had, counsel argued, already served two months as a result of the charged offense. Defendant knew he would go back to prison if he further violated the no-contact order.

¶ 10       During the hearing, the circuit court asked if the State knew the nature of why defendant was in the "DOC for the '24, '22 and '21 combined plea or finding of guilt." The State responded it believed probation for the 2021 case was revoked and defendant was resentenced to two years in the DOC for domestic battery and one and a half years for unlawful restraint. The court asked if those offenses, as well as the 2022 violation of the order of protection, involved

- 4 -

Kirkland. The State responded affirmatively.

¶ 11    The State further proffered, "[t]here were multiple calls, multiple texts, multiple instances of this Defendant contacting the victim." The State argued there were no new offenses since September 2025 because defendant was in the DOC. The State maintained defendant is a clear threat to Kirkland because "[h]e continuously contacts her, even though he is not supposed to." The State argued, "[T]here is nothing this Court can do to keep her safe, other than to *** deny his release at this time."

¶ 12    The circuit court ordered defendant detained, stating:

"I agree with the State. The proof is evident, presumption is great that [defendant] committed the detainable offense, violation of stalking/no contact. Defendant made contact with the protected party via cell phone.

The criminal history has already been stated by the State.

I do not believe there are any conditions or combination of conditions that could mitigate the threat of dangerousness to Amanda Kirkland."

¶ 13    Defendant later sought release by filing a motion for a change in circumstances, on which a hearing was held on January 8, 2026. Defense counsel reported he was hired by defendant's current girlfriend, whom defendant had been seeing since August 2025, after the original detention hearing and learned of information not presented at the original hearing. Counsel stated, contrary to what was reported in the earlier hearing, the victim in the 2024 unlawful-restraint case was not Kirkland. Counsel acknowledged Kirkland was the victim in the domestic-battery case and in the violation-of-the-order-of-protection cases.

¶ 14　　　　Defense counsel referred to defendant's relationship with Kirkland as "on-again, off-again." He introduced two documents, entitled "Official Statement of State's Attorney and Trial Judge." One concerned case No. 22-CF-64. The second concerned Macoupin County case No. 22-CF-67. Both involved convictions for violation of an order of protection. In case No. 22-CF-64, the contact with Kirkland occurred on March 29, 2022. He was sentenced to two years in the DOC. In case No. 22-CF-67, defendant committed the offense on March 12, 2022, and was sentenced to two years in the DOC. The documents do not specify if the sentences were to be served concurrently. Both documents refer to a previous conviction for violation of an order of protection, which had not before been referenced by either party, Macoupin County case No. 20-CM-52. Regarding these cases, Kirkland, who had obtained an order of protection in December 2021, moved to vacate that order in both January and February 2022. Kirkland, however, failed to go to court for the hearing on either motion. The March 2022 offenses then occurred. Then, in April 2022, Kirkland again moved to vacate the December 2021 order but did not appear in court. In July 2022, Kirkland filed a similar motion, and the order of protection was vacated.

¶ 15　　　　Defense counsel further stated the relationship continued after defendant was released from the DOC. During that time, Kirkland was on orders from drug court not to have contact with defendant. Defendant was on orders from the parole board not to have contact with Kirkland. Kirkland regularly stayed at defendant's mother's house. Before the parole board, defendant stated his messages were sent in response to Kirkland's messages about wanting to resume a relationship. Defendant did not want to continue the relationship. The parole board found a violation and sanctioned defendant for 60 days. Defendant had no interest in talking to Kirkland again. Defense counsel further reported defendant stated his mandatory supervised release period had been extended to 2029, but counsel had not verified that. Defendant knew an

additional violation would result in "significant amount of time in custody."

¶ 16        At the hearing, the State countered by noting the only new information provided was the order from the Prisoner Review Board. The State noted the victim was not present for that hearing.

¶ 17        The circuit court denied defendant's motion.

¶ 18        On January 30, 2026, defense counsel filed a motion for relief. In the motion, defense counsel asserted the State failed to show defendant posed a real and present threat to Kirkland's safety and no condition or combination of conditions could mitigate any threat. Defense counsel acknowledges the only criminal history involving physical violence by defendant against Kirkland was a conviction for a 2021 Class 4 domestic battery but contends that history does not show electronic monitoring or other conditions would be insufficient to protect her.

¶ 19        Attached to defendant's motion for relief is a copy of the unlawful-restraint charge in case No. 24-CF-71. In that case, the victim is female, not Kirkland, from whom defendant took her cell phone and whom defendant threatened to harm if she left his residence.

¶ 20        At the hearing on the motion, the circuit court denied it. This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22        The Code dictates, when the State seeks to invoke the dangerousness standard to detain pretrial a defendant charged with an eligible offense (see 725 ILCS 5/110-6.1(a) (West 2024)), the State must prove by clear and convincing evidence (1) "the proof is evident or the presumption great that the defendant has committed" an offense described in section 110-6.1(a) (*id.* § 110-6.1(e)(1)); (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-

- 7 -

6.1(e)(2)); and (3) "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(3)(i)). Because the parties presented no live testimony during the detention hearing, our review of defendant's detention order is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 23        On appeal, defendant first asserts the State did not prove clearly and convincingly he posed a real and present threat to Kirkland. Defendant maintains the texts, which did not include threats but wishes for her well-being and his intention to walk away, showed no threat to Kirkland. Defendant further emphasizes, in the approximately two-month period between the calls and the date of the detention hearing, defendant made no contact with Kirkland.

¶ 24        Section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2024)) lists factors to be considered when determining whether a defendant poses a real and present threat to a person or persons or the community. These include the following:

> "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
> > (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. ***
> >
> > (B) Any evidence of the defendant's psychological, psychiatric or other similar social

history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial ***.

(9) Any other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g)(1)-(9).

¶ 25    Considering these factors as they apply to defendant, we find the State clearly and convincingly proved defendant poses a real and present threat to Kirkland. One cannot look at the September 2025 calls and texts in a vacuum. The circumstances of the offense (*id.* § (g)(1))

show defendant, approximately one month after a new relationship began, was concerned about who took Kirkland home after work. Defendant has a history of violating orders of protection and acting violently toward Kirkland and at least one other woman. Macoupin County reports show defendant's first violation of an order of protection occurred in 2020. In 2021, defendant battered Kirkland, a crime of violence (see *id.* § (g)(2)(A)). In December of that same year, Kirkland again sought an order of protection, which did not prevent defendant from repeatedly contacting her. Defendant was also on mandatory supervised release, which also did not prevent his contact (see *id.* § (g)(8)). Defendant's unlawful-restraint offense, occurring in 2024, involved taking a cell phone from another woman and threatening to harm her. We reject defendant's contention the unlawful-restraint conviction with a different woman has no bearing on whether defendant poses a threat to Kirkland. This shows a pattern of behavior toward women and supports the conclusion defendant's release presents a real and present threat to Kirkland.

¶ 26 Defendant next contends the State failed to prove sufficiently no less restrictive conditions can mitigate the risk to Kirkland's safety. Defendant concedes that his violation of orders of protection and being on mandatory supervised release at the time of the September 2025 contact are reasonable considerations. However, he maintains they do not prove GPS monitoring and reporting to pretrial services would not mitigate any threat to Kirkland's safety.

¶ 27 We disagree. Defendant has proven repeatedly he will not abide by court orders. He has violated multiple orders of protection. When there was a looming threat of an immediate return to prison with a violation of a condition of mandatory supervisory release, defendant continued to violate court orders. Defendant has battered Kirkland and, in 2024, unlawfully restrained another with threats of harm. We are convinced no court-ordered condition can adequately protect Kirkland. The State has met its statutory burden.

¶ 28    The circuit court did not err in denying defendant's pretrial release.

¶ 29                        III. CONCLUSION

¶ 30    We affirm the circuit court's judgment.

¶ 31    Affirmed.